IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02721-MSK-KMT

BRUCE W. JONES,

      Plaintiff,

v.

MARK KELLAR, individually and in his official capacity as the health service Administrator at
FCI-Florence,
LISA MCDERMOTT, individually and in her official Capacity as Assistant Health Services
Administrator at FCI-Florence,
PETER BLUDWORTH, individually and in his official capacity as associate warden at FCI-
Florence,
MIKE GOODIN, individually and in his official capacity as chief pharmacist at FCI-Florence,
DR. DAVID ALLRED, individually and in his official capacity as clinical director of FCI-
Florence,
DR. GEORGE SANTINI, individually and in his official capacity as staff Physician at FCI-
Florenece,
CARI RITTER, individually and in her official capacity as mid-level Provider, at FCI-Florence,
MRS. A. VINYARD, individually and in her official capacity as Physician assistant at FCI-
Florence,
GILBERTA TRUJILLO, individually and in her official capacity as secretary of medical at FCI
Florence,
MR. GRIFFIN, individually and in his official capacity as Correctional Officer at FCI-Florence,
JOHN DOE, individually and in his official capacity as Chief Health Programs at North Central
Region, Leavenworth, Kansas, and
DR. JAMES PELTON, individually and in his official capacity as Region Medical Director at
North Central Region, Leavenworth, Kansas,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on the Motion to Dismiss of Defendants Kellar, McDermott, Bludworth, Goodin, Allred, Santini, Ritter, Vinyard and Trujillo ("Defendants") (Doc. No. 66, filed June 4, 2012 ["Mot."]) and Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. No. 98, filed Sept. 17, 2012).

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint (Doc. No. 27, filed Feb. 2, 2012 ["Am. Compl."]) and are assumed true for the purposes of the motion to dismiss. Plaintiff is a federal prisoner incarcerated at FCI-Florence.  (*Id*. at 3.)  Plaintiff generally alleges over a three-year period of time, medical staff and administration at FCI-Florence knew about and failed to inform him of serious medical problems and to provide recommended treatment. (*Id*. at 8-9.)  Plaintiff also alleges he was denied access to the administrative remedy process. (*Id*. at 8.)  Plaintiff's Amended Complaint asserts five claims against Defendants in both their official and individual capacities.[1]  (*See id*.)

In Claim One, Plaintiff alleges that on January 23, 2008 he had a seizure and was taken to Denver Health Center.  (*Id*. at 11.)  A CT scan was performed, and Plaintiff states it showed a "soft tissue mass at C-5, C-6" and that the radiologist recommended an MRI be performed.[2] (*Id*.)  Shortly thereafter, Plaintiff was transferred to FCI-Florence, where Defendant Kellar began

---

[1]Plaintiff's Amended Complaint also asserts a sixth claim against only Defendant Pelton that is not considered herein, as he has not joined in the Motion to Dismiss.

[2]Plaintiff's Amended Complaint does not allege any claims related to the CT scan or discovery of the soft tissue mass.  Rather, his claims focus entirely on care after he was transferred to FCI-Florence.  (*See* Am. Compl.)

2

treating him for neck and arm pain.  (*Id*.)  Plaintiff was also seen by Defendants Santini and

Ritter, medical providers at FCI-Florence.  (*Id*.)  Plaintiff alleges Defendants Kellar and Santini

failed to inform him of the soft tissue mass found in the CT scan performed at Denver Health.

(*Id*.)  Plaintiff also alleges he was not given adequate pain medications by Defendants Ritter and

Allred, despite increased pain.  (*Id*. at 12.)

At some point, a neurosurgeon consult was ordered.  (*Id*. at 11.)  On July 22, 2010, the

Utilization and Review Committee ("URC"), consisting of Defendants Kellar, McDermott,

Allred, Santini, Bludworth, Ritter, Vinyard and Trujillo, met and denied the request for the

consultation.  (*Id*. at 12.)

In Claim Two, Plaintiff alleges that on February 16, 2011, Defendant Allred prescribed

morphine sulphate for pain management, but Defendant Goodin, the Chief Pharmacist at FCI-

Florence, refused to fill the prescription.  (*Id*. at 14.)  Plaintiff informed Defendant Bludworth,

the associate warden at FCI-Florence, of Defendant Goodin's actions through an inmate request

form, and in response, Plaintiff was seen by Defendants Allred, Ritter and McDermott on

February 23, 2011, who allegedly informed him that his prescription had been rescinded because

Plaintiff had been seen working at a prison job.  (*Id*.)  Plaintiff alleges they prescribed an

alternate medication to which he had a "stated allergy," and when he received it at the next "pill

line," he had a reaction that caused him to undergo two days of emergency care.  (*Id*.)

In Claim Three, Plaintiff alleges that he pursued administrative remedies for the original

denial of his neurosurgeon consult and for "staff misconduct."  (*Id*. at 15.)  Plaintiff alleges he

never received responses to the requests.  (*Id*.)

3

In Claim Four, Plaintiff alleges that on April 12, 2011, he was seen by Dr. Koons, a neurosurgeon. (*Id*. at 17.) However, Defendant Griffin[3] refused to remove the restraints during the exam. (*Id*.) Plaintiff alleges Dr. Koons was unable to conduct a proper exam, and further treatment was delayed for nine months. (*Id*.) Plaintiff also alleges Defendant Allred spoke with him about the test results, and in doing so, informed him for the first time of the soft tissue mass discovered in 2008 and admitted he was negligent for not discussing its existence earlier. (*Id*.)

In Claim Five, Plaintiff alleges that on September 21, 2011, he saw Defendant Santini, and again requested pain medication. (*Id*. at 18.) Plaintiff alleges he overheard a discussion between Defendants Santini and Goodin in which Defendant Santini expressed his intention to place Plaintiff on pain medications, but Goodin said he would not provide the medications. (*Id*.) Plaintiff also alleges Defendant Goodin, in refusing to dispense the prescribed medications, "was practicing medicine without a license, he was dictating to the staff physician what could be prescribed violating my 8th amendment right, the right to be free from cruel and unusual punishment Wanton infliction of pain interference of medical care by non qualified staff." (*Id*.)

Also as part of this claim, Plaintiff alleges that in October 2011, Defendant Bludworth, the acting warden, told Plaintiff that all his administrative filings were making Defendant Bludworth look bad. (*Id*.) Plaintiff responded that nothing had been done to help him for the past three years, to which Defendant Bludworth allegedly responded, "Your ass belongs to me, I

---

[3]Although Plaintiff asserts the individual who held him in restraints was Defendant Griffin, no individual by that name is employed at FCI-Florence. The Summons and Complaint were returned unexecuted as to that defendant. (*See* Doc. No. 55.) Claims against Defendant Griffin are not addressed in the Motion or this recommendation.

should throw your ass in the SHU so you would know." (*Id.*)  Plaintiff also alleges he filed a grievance that was rejected by Defendant Bludworth.  (*Id.*)

Plaintiff seeks compensatory damages and prospective injunctive relief in the form of provision of surgery allegedly recommended by the neurosurgeons, proper pain management and rehabilitation, and transfer to a medical facility capable of addressing his medical needs.  (*Id.* at 21.)

## PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, filed his original Prisoner Complaint (Doc. No. 1) on October 19, 2011, alleging jurisdiction pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  On February 2, 2012, Plaintiff filed his Amended Complaint (Doc. No. 27 ["Am. Compl."]), which is the operative pleading in this action.  After reviewing the Amended Complaint, Senior District Judge Lewis T. Babcock summarily dismissed a number of the defendants.  (*See* Order dated Feb. 13, 2012, Doc. No. 31.)

Defendants filed their Motion to Dismiss on June 4, 2012.  (Mot.)   Plaintiff responded on June 20, 2012.  (Doc. No. 68 ["Resp."].)  Defendants did not file a reply.

On September 17, 2012, Plaintiff filed a "Motion for Leave to File an Amended Complaint" and tendered his proposed Second Amended Complaint.  (Doc. Nos. 98, 98-1.)  Defendants responded to Plaintiff's Motion to Amend on November 2, 2012.  (Doc. No. 114.)  Plaintiff did not file a reply.

**LEGAL STANDARDS**

*A.*      **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*,

927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the

plaintiff in the absence of any discussion of those issues").

*B.*      *Lack of Subject Matter Jurisdiction*

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment

on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

6

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The

dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice

is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v.

Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

**C.**     ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 68-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 678.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### D.    *Amendment of Pleadings*

Because Plaintiff filed his motion after the deadline for amending the pleadings, the court employs a two-step analysis, first determining whether Plaintiff has shown good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b), then evaluating whether Plaintiff has satisfied the standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a). This court has stated that

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted).

Once Plaintiff has shown good cause for modifying the scheduling order, he must also satisfy the requirements of Rule 15(a) for amending the pleadings.  Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Notably,

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957).

## ANALYSIS

### A.    *Defendants' Motion to Dismiss*

In the Motion to Dismiss, Defendants Goodin and Ritter argue they are entitled to absolute immunity pursuant to 42 U.S.C. § 233(a).  (Mot. at 6.)  The remaining defendants argue that all official-capacity claims are barred by sovereign immunity and that the entirety of the alleged conduct fails to state a claim, thus entitling them, in their individual capacities, to qualified immunity.  (*Id*. at 7-19.)

10

## 1.      Absolute Immunities

### a.         42 U.S.C. § 233(a)

Defendants Goodin and Ritter argue that they, as Public Health Service officers, are immune from liability under 42 U.S.C. § 233(a) from Plaintiff's claims arising under *Bivens*. (Mot. at 6.)  Section 233(a) of 42 U.S.C. "makes the United States the exclusive defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment." *Lurch v. United States*, 719 F.2d 333, 340 n.10 (10th Cir. 1983).  Section 233(a) specifies the Federal Tort Claims Act ("FTCA") as the exclusive remedy for such claims. *Cuoco v. Moritsugu*, 222 F .3d 99, 107 (2d Cir. 2000).  This is so whether the suit is against the Public Health Service officer in his official or individual capacity.  *See* § 233(a).  *See also Mudd v. Fish*, 7:08–cv–0641, 2009 WL 4110754, at *2 (W.D. Va., Nov. 24, 2009).

To effectuate § 233, the Attorney General need only certify that the Public Health Service official was acting within the scope of his or her employment at the time of the alleged conduct.  *See, e.g.*, *Freeman v. Vineyard*, No. 10-cv-02690-MSK-CBS, 2012 WL 1813119, at *6 (D. Colo. May 18, 2012).  Defendants Goodin and Ritter have submitted such a certification. (*See* Mot., Ex. 2.)  Thus, they are entitled to immunity from suit for all claims arising from the medical care they provided to Plaintiff, and the claims against them are properly dismissed for lack of jurisdiction.[4]

---

[4]To the extent Plaintiff's Amended Complaint makes specific allegations against Defendants Ritter and Goodin, the court need not further analyze such allegations in the remainder of this Recommendation.

### b.      Sovereign Immunity

Defendants argue that any "official capacity *Bivens* claims" are barred by sovereign immunity.  (*Id*. at 19-20.)  Defendants, in their official capacities, enjoy sovereign immunity from *Bivens* actions.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (holding the United States is immune from a *Bivens* claim for money damages); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities."). Sovereign immunity removes a court's jurisdiction over a complaint.  *See Governor of Kan. v. Kempthorne*, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of sovereign immunity").  This court, therefore, lacks jurisdiction over Plaintiff's official-capacity claims for monetary damages against Defendants.

As to the prospective injunctive relief Plaintiff seeks, Defendants argue *Bivens* does not authorize injunctive relief against federal officials in their official capacities, as it is limited only to monetary damages.  (Mot. at 20, n.4.)  To support such a proposition, Defendants cite to *Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000), a wholly inapplicable case that concerns the application of qualified immunity and in which the plaintiff's claims for injunctive relief were found moot because the plaintiff had been released from custody.  *Id*. at 94.  Defendants' argument further ignores the Tenth Circuit's holding in *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005), that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations.  *See Simmat*,

413 F.3d at 1230-33.  Therefore, Plaintiff's official-capacity claims for prospective injunctive relief may proceed to the extent they survive Defendants' Motion to Dismiss on other grounds raised.

### 2.    *Personal Participation*

Defendants argue that Plaintiff has alleged no facts showing that the defendants participated in the alleged violations or acted in any other role other than a gatekeeper.  (Mot. at 16.)  Defendants also argue that Plaintiff appears to rely on the supervisory role of Defendant Allred as Clinical Director to establish liability.  (*Id.*)

"A *Bivens* action requires an allegation of personal participation, demonstrating how each defendant caused the deprivation of a federal right." *Antelope v. U.S.*, No. 08-cv-00649-LTB-MEH, 2009 WL 473655, at *6 (D. Colo. Feb. 25, 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Government officials may not be held liable solely on a *respondeat superior* or vicarious liability theory.  *Iqbal*, 556 U.S. at 676.  The limited theory of supervisory liability in the context of *Bivens* requires that a plaintiff "plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010).  "The traditional standard for supervisory liability in this circuit 'requires allegations of personal direction or of actual knowledge and acquiescence' in a subordinate's unconstitutional conduct."

*Arocho v. Nafziger*, 367 F. App'x 942, 956 (10th Cir. 2010) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992)).  It is nonetheless well-established that a prison medical official who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role.  *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

In Claim One, Plaintiff alleges that the members of the URC[5] made the decision to deny him further treatment (Am. Compl. at 12) and that Defendant Allred refused to increase his pain medication (*id*. at 13).  In Claim Two,[6] Plaintiff alleges Defendants McDermott and Allred substituted Plaintiff's prescription medication with an alternate medication.  (*Id*. at 14.)  Such allegations sufficiently allege that Defendants McDermott and Allred personally participated in the denial of medical care.  Moreover, contrary to Defendants' argument, Plaintiff does rely on Defendant Allred's supervisory role to establish liability.  (Mot. at 16.)  Finally, even if these defendants acted solely in gatekeeper roles with respect to their duties on the URC, personal participation on the part these defendants has been sufficiently alleged.

Therefore, Defendants' motion to dismiss on the basis of personal participation is properly denied.

---

[5]As noted *infra*, the URC allegedly includes Defendants Kellar, McDermott, Allred, Santini, Bludworth, Vinyard and Trujillo.

[6]The court addresses the personal participation requirement with respect to Claims One and Two because, as discussed further herein, it is this court's recommendation that these are the only claims that should proceed.

*3.*     *Due Process Claims*

Plaintiff alleges Defendants violated his Fifth and Fourteenth Amendment rights.  To the extent Plaintiff is asserting a Fourteenth Amendment due process claim, Plaintiff's claims are not cognizable under the Fourteenth Amendment because Plaintiff is a federal prisoner suing federal actors (*see* Am. Compl. at 8), and the Fourteenth Amendment requires state action.  U.S. Const. Amend. XIV ("nor shall any *State* deprive any person of life, liberty, or property, without due process of law") (emphasis added).  Rather, Plaintiff's due process claims are cognizable under the Fifth Amendment.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. V.  In comparing procedural and substantive due process, the Tenth Circuit explained that "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  In order to state a substantive due process claim, "[Plaintiff] must first allege sufficient facts to show a property or liberty interest warranting due process protection."  *Crider v. Bd. of County Comm'rs of Cnty. of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001); *see also Hyde Park*, 226 F.3d at 1210.  Similarly, to allege a violation of procedural due process, a plaintiff must first establish a deprivation of an interest in life, liberty, or property.  *See Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).

Here, the Amended Complaint is devoid of any allegations that Plaintiff was deprived of any liberty or property without due process.  Regardless of the deferential standards accorded *pro se* pleadings, it remains true that a court must not "assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.  Consequently, the court is not to "construct arguments or theories for the plaintiff in the absence of any" pertinent allegations.  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Therefore, for the foregoing reasons, Plaintiff's due process claims are properly dismissed.

### 4.   *Claims for Failure to Respond to/Denial of Grievances*

In Claim Three, Plaintiff alleges Defendant McDermott failed to respond to Plaintiff's administrative grievances (Am. Compl. at 15), whereas in Claim Five, he alleges that Defendant Bludworth denied an administrative grievance.  (*Id*. at 18.)

The Tenth Circuit has repeatedly held "that 'the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations.'" *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished decision) (quoting *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished decision)); *see also Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation).  Likewise, the mere failure to respond to a grievance does not implicate a constitutional right.  *See Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT, 2010 WL

3359709, at *15-16 (D. Colo. Aug 25, 2010) ("Plaintiff's [ ] claim also fails to the extent it is premised on Defendants' alleged failures to . . . respond to his grievances.").

Therefore, Plaintiff has failed to state a constitutional violation in Claim Three against Defendant McDermott or in Claim Five against Defendant Bludworth.

### 5.      *Claims for Deliberate Indifference*

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Where the prisoner alleges only delay, rather than denial of treatment, he must assert that the delay caused him substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The Eighth Amendment does not entitle a prisoner to a particular course of treatment. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). "[T]he subjective component is

not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercised his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Neither negligence nor medical malpractice violate the Eighth Amendment. *Estelle*, 429 U.S. at 106. A prisoner's difference of opinion with medical staff regarding his treatment does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *see also Estelle*, 429 U.S. at 107. "In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need." *Estelle*, 429 U.S. at 106.

### A.   *Objective Component*

With respect to the objective component of a deliberate indifference claim, Defendants argue Plaintiff's condition cannot be characterized as sufficiently serious without reference to the discovery of the soft tissue mass in 2008, which would have occurred outside the two-year statute of limitations for *Bivens* claims in Colorado. (Mot. at 12.) However, the court does not construe Plaintiff's deliberate indifference claim to be so narrowly restricted as only encompassing the 2008 discovery of the soft tissue mass, as Plaintiff alleges continued failure to provide proper care after Plaintiff's transfer to FCI-Florence and independent of the discovery of the soft tissue mass. (*See* Am. Compl. at 8-10.) Plaintiff alleges that after discovery of the soft tissue mass, he was transferred to FCI-Englewood and then to FCI-Florence, where he continued to be incarcerated. (*Id*. at 8.) It was only after this transfer that Plaintiff began experiencing severe pain, numbness, and the loss of his ability to sweat in certain portions of his body. (*Id*. at 8-9.) Moreover, Plaintiff has alleged that he has suffered pain for an extended period of time,

18

manifested by his reporting to sick call over forty times between August 2010 and August 2011.

(*Id*. at 9, 12.)  Such an allegation is sufficient to satisfy the objective prong of an Eighth

Amendment claim.  *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("the substantial

harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain").

### B.       Subjective Component

#### i.       Claim One

Liberally construing the Amended Complaint, Plaintiff generally alleges the URC

member defendants – Defendants Kellar, McDermott, Allred, Santini, Bludworth, Vinyard and

Trujillo – have been aware of his pain and the fact that the pain remains unabated despite the

treatment he has received, yet the defendants have failed to allow him other treatment options.

(Am. Compl. at 8-10).  Defendants argue Plaintiff has not alleged any facts specifically directed

at Defendants' states of mind.  (Mot. at 12-14.)  However, it is well-established that deliberately

preventing an inmate from receiving treatment, or denying him access to medical professionals

capable of evaluating his need for treatment, constitutes deliberate indifference.  *See Ramos*, 639

F.2d at 575; s*ee also Denison v. Colo. Dep't. of Corrs.*, No. 06-cv-02385-REB-KLM, 2008 WL

732592, at *8 (D. Colo. Mar. 8, 2008) (finding a plausible Eighth Amendment claim on

allegations of failure to recognize and treat a herniated lumbar disc, denial of access to a

specialist, and discontinuation of medication without provision of an alternative).  Here, Plaintiff

alleges a neurosurgery consult was ordered by a treating medical provider, the URC was aware

of that request and of Plaintiff's ongoing pain, yet the URC deliberately denied that request in

the face of the "potential for permanent injury."  (Am. Compl. at 11-12.)  He further alleges that

19

through all this, the medication provided to him was insufficient to manage his pain, and that Defendant Allred knew Plaintiff was in pain but still refused to recommend an outside specialist or to increase his medication dosage or give him alternate medication or treatment.  (*Id*. at 12-13.)

Therefore, at this early stage, accepting the factual allegations of the Amended Complaint as true, the court finds Plaintiff has pleaded sufficient facts to satisfy the subjective component of a deliberate indifference claim as to Claim One.

### ii.     *Claim Two*

Plaintiff alleges in Claim Two that Defendants McDermott and Allred personally rescinded Plaintiff's prescribed medication and substituted an alternate medication to which Plaintiff had a "stated allergy," resulting in two days of emergency care.  (Am. Compl. at 14.) Taking these allegations as true and construing them in the light most favorable to Plaintiff, *Hall*, 935 F.2d at 1198, the court finds Plaintiff has alleged sufficient facts to state a claim for deliberate indifference to his medical needs against Defendants McDermott and Allred.

### iii.     *Claim Four*

Plaintiff's allegation in Claim Four that Defendant Allred allegedly admitted he was negligent is insufficient as a matter of law to establish deliberate indifference.  *See Estelle*, 429 U.S. at 106 (noting a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment). Therefore, this court finds Plaintiff has failed to satisfy the subjective prong of a deliberate indifference claim in Claim Four.

### iv.    Claim Five

To the extent Defendant Bludworth's threats to place Plaintiff in the SHU are asserted as a basis for Eighth Amendment liability, the Tenth Circuit has explained that mere threats do not amount to an Eighth Amendment violation.  *See McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001).  Therefore, this court finds Plaintiff has failed to satisfy the subjective prong of a deliberate indifference claim in Claim Five.

### 6.    Qualified Immunity

Defendants argue they are entitled to qualified immunity in their individual capacities because the alleged conduct fails to state a claim.  (Mot. at 15-19.)  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

Because Plaintiff has failed to state claims for violations of his Fifth Amendment due process rights, for the alleged failure to respond to grievances in Claim Three, or for Eighth Amendment violations in Claims Four and Five, the defendants are entitled to qualified immunity in their individual capacities as to those claims.  *See Herrera*, 589 F.3d at 1070.

The court has determined that Plaintiff states a plausible Eighth Amendment violation in Claim One as to a Defendants Kellar, McDermott, Allred, Santini, Bludworth, Vinyard and Trujillo, and in Claim Two as to Defendants McDermott and Allred.  Therefore, the next hurdle Plaintiff must clear to overcome these Defendants' assertion of qualified immunity with respect to Claims One and Two is to show that the right he alleges was violated was clearly established at the time.  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283-84 (10th Cir. 2007) (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."  *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).

The law establishing that a prison official's denial of medical care to a prisoner may constitute deliberate indifference has long been established.  *See Estelle*, 429 U.S. at 102.  As a result, Defendants Kellar, McDermott, Allred, Santini, Bludworth, Vinyard and Trujillo are not

entitled to qualified immunity in their individual capacities with respect to Claim One, and

Defendants Defendants McDermott and Allred  are not entitled to qualified immunity in their

individual capacities with respect to Claim Two.  Defendants

**B.     *Plaintiff's Motion to Amend***

In his proposed Second Amended Complaint, Plaintiff seeks to (1) dismiss Defendants

Goodin and Ritter[7] and substitute the United States government as a defendant under the FTCA;[8]

and (2) add a new claim for deliberate indifference.  (Doc. No. 98-1 at 20-22.)  Defendants argue

that, aside from his amendments being untimely, Plaintiff has failed to demonstrate exhaustion of

his administrative remedies for either the FTCA claim or the denial of occupational therapy, and

that Defendants would be prejudiced if Plaintiff were allowed to amend.  (*See* Doc. No. 114.)

Plaintiff filed his Motion to Amend a week after the extended deadline for amending

pleadings, and just shortly after discovery was ordered stayed in the entire case.  (*See* Order

dated Sept. 12, 2012, Doc. No. 95.)  Even assuming Plaintiff could demonstrate the good cause

required for an extension under Rule 16(b), which he does not address in his Motion to Amend,

this court finds Plaintiff's proposed amendments are properly denied under Rule 15(a) as futile.

---

[7]In his motion to amend, Plaintiff concedes the absolute immunity of these defendants pursuant to 42 U.S.C. § 233(a).  (Doc. No. 98, ¶ 2.)

[8]Nonetheless, Plaintiff continues to name Defendants Goodin and Ritter in the caption of his proposed Second Amended Complaint and make allegations concerning them.  (*See* Doc. No. 98-1.)

### A.      Proposed Claim Against United States

In enacting the FTCA, the United States waived, with certain exceptions, its sovereign immunity for common law torts committed by its agents in the scope of their employment.  *See* 28 U.S.C. § 2674; *Woodruff v. Covington*, 389 F.3d 1117, 1126 (10th Cir. 2004) ("The [FTCA] is a limited waiver of sovereign immunity" that only applies to federal employees.) (internal quotation marks and citation omitted).  The express terms of such waiver, however, are limited such that a suit may not be brought against the Government, "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."  28 U.S.C. § 2675(a).  Exhaustion of administrative remedies is a prerequisite to suit under the FTCA.  *See id.*; *McNeil v. United States*, 508 U.S. 106, 107 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463 (10th Cir. 1989) (Section 2675 of the FTCA requires that administrative remedies be exhausted before suit is filed in district court.).

More importantly, Plaintiff cannot meet the jurisdictional requirements of the FTCA by asserting his tort claim for the first time in his proposed Second Amended Complaint.  The Tenth Circuit has held that an amended complaint filed after the FTCA exhaustion requirement has been satisfied cannot cure a prematurely-filed original complaint.  *See Dunlap v. Harper*, 188 F.3d at 1199.  "Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary

burden on the judicial system." *Id.  See also Stine v. Swanson*, 2008 WL 4330568, *1 (D. Colo.

Sept. 18, 2008) (in dismissing a FTCA claim brought by a federal prisoner, holding that

plaintiff's amended complaint cannot cure a lack of subject matter jurisdiction that existed at the

time of the filing of the original complaint); *Rashad v. D.C. Central Detention Facility*, 570 F.

Supp.2d 20, 24 (D.D.C. 2008) (holding that a failure to comply with the FTCA exhaustion

requirement cannot be cured by amending the original complaint at a later date); *Stevens v.

United States*, 2002 WL 1156027, *2 (D. Kan. May 20, 2002) (holding that a federal prisoner's

prematurely-filed FTCA claim could not be cured by amendment of the complaint, but only by

the filing of a new and independent action).

Here, it is clear Plaintiff failed to exhaust his administrative remedies before filing the

FTCA claim.  In his proposed Second Amended Complaint, Plaintiff admits he filed "a Federal

Tort Claim [on] Nov 11 2011."  (Doc. No. 98-1 at 21.)  However, Plaintiff does not state that the

claim has been finally denied by the agency in writing.  28 U.S.C. § 2675(a).  Additionally,

Plaintiff filed his tort claim with the Government after he filed his initial Complaint on October

19, 2001 (*see* Doc. No. 1), which is insufficient.  *See Dunlap*, 188 F.3d at 1199.

Accordingly, Plaintiff's motion to amend the Complaint to substitute the United States as

a defendant and to raise a claim under the FTCA is properly denied as futile.

### B.      Proposed New Deliberate Indifference Claim

Plaintiff seeks to add a new claim against Defendants Bludworth, Kellar, Allred, Santini,

Ritter, Vinyard, and Trujillo.  (Doc. No. 98-1 at 20.)  Plaintiff also states wishes to add "Ms.

Alvarado," who is not a defendant in the now-operative complaint (Doc. No. 27), "in place of

Lisa McDermott." (Doc. No. 98-1 at 20.)  In the proposed new claim, Plaintiff alleges he was

denied occupational therapy on June 14, 2012.  (*Id.*)  Plaintiff also alleges he "has been injured

twice in the course of physical therapy done at FCI Florence because of improper equipment and

has been refused medical treatment for the injury."  (*Id.*)  Plaintiff states that the denial of

occupational therapy and failure to provide safe physical therapy constitutes an Eighth

Amendment violation.  (*Id.*)

In this proposed new claim, Plaintiff fails to allege the personal participation of any of

the current defendants in the alleged deliberate indifference.  For example, Plaintiff does not

allege that any of the defendants personally participated in the denial of the occupation therapy

or in the physical therapy that allegedly injured him.  As explained *supra*, Plaintiff must

demonstrate how each defendant caused the deprivation of a federal right." *Antelope*, 2009 WL

473655, at *6.  Moreover, to the extent Plaintiff wishes to hold any of the defendants responsible

because of their supervisory roles, has not plausibly pleaded that the defendants, "by virtue of

[their] own conduct and state of mind" violated his Constitutional rights.  *Dodds*, 614 F.3d at

1198.

Plaintiff also has entirely failed to allege the role "Ms. Alvarado" played in the alleged

constitutional violation and has failed to name Ms. Alvarado in the caption or list her as a party

in the proposed complaint.  (*See* Doc. No. 98-1 at 21–24.)  Moreover, though it appears Plaintiff

wishes to substitute Ms. Alvardo for Defendant McDermott, he continues to name Defendant

McDermott in the caption and continues to make allegations against her throughout the proposed

amended complaint.  (*See* Doc. No. 98-1.)

26

Therefore, for the foregoing reasons, the amendments Plaintiff seeks to make are properly denied as futile.[9]

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss" (Doc. No. 66) be **GRANTED** in part and **DENIED** in part as follows:

1.     The claims against Defendants Goodin and Ritter should be dismissed for lack of jurisdiction, as they are entitled to immunity under 42 U.S.C. § 233(a);

2.     The official-capacity claims for monetary damages against the remaining defendants should be dismissed because Defendants are entitled to sovereign immunity;

3.     Claims Three, Four and Five should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6);

4.     Defendants Kellar, McDermott, Bludworth, Allred, Santini, Vinyard and Trujillo should be granted qualified immunity in their individual capacities on Plaintiff's Fifth

---

[9]The court need not address Defendants' remaining arguments opposing Plaintiff's amendments.  Nevertheless, to the extent Defendants oppose the amendments for Plaintiff's failure to exhaust under the Prison Litigation Reform Act, although failure to exhaust administrative remedies is an affirmative defense pursuant to the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216–17 (2007).  In application of *Jones*, the Tenth Circuit has noted that it must be clear from the face of the complaint that an inmate failed to exhaust available administrative remedies before the district court may dismiss the claim for failure to exhaust. *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  Because it is not clear from the face of the proposed amended complaint that Plaintiff has failed to exhaust his administrative remedies (*see* Doc. No. 98-1 at 23), the court may not find his proposed amended complaint subject to dismissal.

Amendment due process claims, on Plaintiff's Claim Three for the alleged failure to respond to grievances, and on Claims Four and Five for alleged Eighth Amendment violations;

5.      Claim One should proceed against Defendants Kellar, McDermott, Allred, Santini, Bludworth, Vinyard and Trujillo in their individual capacities and their official capacities for injunctive relief only;

6.      Claim Two should proceed against Defendants McDermott and Allred in their individual capacities and their official capacities for injunctive relief only.   The court further

**RECOMMENDS** that Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. No. 98) be **DENIED**.  The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 31st day of January, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge